**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES P. TENNILLE; ADELAIDA DELEON; YAMILET RODRIGUEZ; ROBERT P. SMET, individually and on behalf of all others similarly situated,

Plaintiffs - Appellees,

v.

THE WESTERN UNION COMPANY; WESTERN UNION FINANCIAL SERVICES, INC.,

Defendants - Appellees.

---

SIKORA NELSON; PAUL DORSEY,

Objectors – Appellants.

Nos. 13-1378, 13-1456

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:09-CV-00938-JLK-KMT)**

---

John E. Anding (Theodore J. Westbrook with him on the briefs), Drew, Cooper & Anding, Grand Rapids, Michigan, for Objector-Appellant Sikora Nelson.

Paul Dorsey, pro se.*

Jeffrey A. Leon, Quantum Legal LLC, Highland Park, Illinois (Jamie E. Weiss, Quantum Legal LLC, Highland Park, Illinois, and Richard J. Burke, Quantum Legal LLC, St. Louis Missouri, with him on the briefs), for Plaintiffs - Appellees.

Before **LUCERO, EBEL,** and **HOLMES,** Circuit Judges.

**EBEL**, Circuit Judge.

Appellants Sikora Nelson and Paul Dorsey ("Objectors") challenge the district court's order requiring them to post an appeal bond, see Fed. R. App. P. 7, in the amount of $1,007,294 in order to pursue their appeals objecting to a class action settlement. Concluding we have jurisdiction under 28 U.S.C. § 1291, we affirm the district court's decision to impose the appeal bond, but we reduce the amount of that bond.

## I. BACKGROUND

Plaintiffs initiated the class action underlying these appeals against Defendants Western Union Company and Western Union Financial Services, Inc. (collectively "Western Union"), based on the fact that, at any given time, Western Union maintains between $130 and $180 million in wire transfers sent by Western Union customers that fail for some reason. These funds belong to Western Union's customers, but Western

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of Paul Dorsey's appeal, No. 13-1456. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). That appeal is therefore ordered submitted without oral argument.

Union returns this money (minus Western Union's administrative fees) only when a customer requests a refund. Frequently, however, the customer is unaware that his wire transfer failed and thus does not know to ask Western Union to return his money. And Western Union, although possessing the customer's contact information, does not notify the customer that his wire transfer failed, but instead holds the unclaimed money and earns interest on it. Eventually, after several years, the law of the state where the customer initiated the wire transfer requires Western Union to notify the customer that his unclaimed funds will soon escheat to the state. At that time, Western Union uses the contact information it has long possessed to give the customer this required notice. If the customer still fails to claim his money, those funds (minus Western Union's administrative fees) escheat to the relevant state, which then holds the funds until the customer claims them.

In this case, four Western Union customers whose wire transfers failed ("Plaintiffs" or "named Plaintiffs") sued Western Union, seeking declaratory and injunctive relief, as well as damages, on behalf of all Western Union customers who have had a wire transfer fail. After several years of litigation, Plaintiffs and Western Union settled the case.

The parties' settlement agreement provided, in part, that in the future Western Union will notify its customers when their wire transfers fail; assist its customers in reclaiming funds that have escheated to a state; and pay these customers interest for the time Western Union held their funds. In addition, Western Union agreed to pay into a

settlement fund all of the money it is holding for its customers, estimated at the time of the settlement to be approximately $180 million. From that fund, a neutral class administrator will pay, to class members who have already reclaimed their money, interest for the time Western Union held their funds; and, to class members who have not yet reclaimed their money, the funds Western Union is holding for them, minus Western Union's administrative fees, plus interest for the time Western Union held that money.

Once Plaintiffs and Western Union reached this settlement, the district court preliminarily certified a class of more than one million customers who experienced failed wire transfers between January 1, 2001 and January 3, 2013, and ordered the class administrator to notify those class members of the class action, the proposed settlement, and the opportunity for them to opt out of the class or to object to the settlement. Several class members objected, including Objectors Nelson and Dorsey. The district court overruled all objections, certified the class, approved the settlement and entered final judgment.

Although the district court approved the settlement, by its terms it cannot take effect until after all appeals challenging the settlement have been resolved. Objectors Nelson and Dorsey each filed such an appeal, challenging the district court's decision to deny their objections. Plaintiffs asked the district court to require Nelson and Dorsey, as a condition of pursuing their appeals, to post an appeal bond in the amount of $1,007,294. The district court granted that request, making Nelson and Dorsey jointly and severally

liable for the bond.[1] This Court, however, stayed the district court's bond order. Tennille v. W. Union Co., No. 13-1378, Order (10th Cir. Nov. 7, 2013). In these appeals, Nelson and Dorsey challenge the appeal bond.

## II. APPELLATE JURISDICTION

As a threshold matter, Plaintiffs contend that we do not have jurisdiction to consider these appeals because the district court's decision to impose the appeal bond is not a final, appealable order. We disagree.

Before imposing the Rule 7 appeal bond, the district court had already entered a final appealable order in this case when it approved the class settlement and entered final judgment. In light of that, there are at least two bases for our jurisdiction to review the appeal bond.

First, the district court made posting the appeal bond a condition of Objectors pursuing their merits appeals challenging the class settlement. Such an order is one entered "in aid of the appellate court's jurisdiction" to consider the merits appeals, 16A Charles Alan Wright et al., Federal Practice & Procedure § 3949.1 (4th ed. Sept. 2014),

---

[1] Notwithstanding Dorsey's argument to the contrary, the district court had jurisdiction to impose the appeal bond. The parties reached their settlement while an interlocutory appeal in the class litigation was pending before this court. Once the parties announced their settlement, we remanded the case to the district court "for the limited purpose of permitting the district court to consider the parties' settlement, along with its proposed settlement class, and to undertake any proceedings and to issue any orders required to consider the settlement." Tennille v. W. Union Co., No. 11-1531, Order (10th Cir. Nov. 20, 2012). That remand was sufficiently broad to authorize the district court to impose the appeal bond at issue here.

and is thus reviewable as part of the underlying merits appeals. See Hamstein Cumberland Music Grp. v. Williams, 556 F. App'x 698, 700 (10th Cir. 2014) (unpublished) (invoking 28 U.S.C. § 1291 to affirm appeal bond and district court's merits decision); Jenson v. Fisher, Nos. 95-1252, 95-1512, 1996 WL 606505, at *1-*2 (10th Cir. Oct. 23, 1996) (unpublished) (reviewing appeal bond with merits appeal). Thus, because we have jurisdiction to review Objectors' merits appeals under 28 U.S.C. § 1291, we also have jurisdiction to review the district court's order making the posting of an appeal bond a condition of pursuing those merits appeals.

Second, even when considered apart from the merits appeals, the district court's order imposing the appeal bond is a final order ending the post-judgment bond proceeding and is thus appealable under 28 U.S.C. § 1291. See Hamstein Cumberland Music, 556 F. App'x at 700 (invoking 28 U.S.C. § 1291 to review appeal bond). The fact that Plaintiffs may later have to execute on the bond, in the event they succeed in defending Objectors' merits appeals, leaves only a ministerial task that does not preclude the bond order from being final and appealable now. See Harbert v. Healthcare Servs. Grp., Inc., 391 F.3d 1140, 1145 (10th Cir. 2004) (indicating that need for further ministerial action does not prevent decision from being final and appealable); cf. United States v. Nipper, 12 F. App'x 634, 635-36 (10th Cir. 2001) (unpublished) (stating, in dicta, that appellants failure to file notice of appeal at the time of the district court's order to post supersedeas bond deprived Tenth Circuit of jurisdiction later to consider issues pertaining to the bond).

Finally, even if the order imposing the appeal bond is not a final decision ending the post-judgment bond proceeding, that bond order would still be appealable as one of "a small class of collateral rulings" that the Supreme Court, in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949), recognized "were sufficiently final to satisfy § 1291" because they "(1) finally decide (2) an important question collateral to (or separate from) the merits of the underlying [post-judgment] proceeding, and (3) [are] effectively unreviewable after final judgment." United States v. Copar Pumice Co., 714 F.3d 1197, 1204 (10th Cir. 2013) (internal quotation marks omitted); see Young v. New Process Steel, LP, 419 F.3d 1201, 1203 (11th Cir. 2005) (invoking Cohen to review an appeal bond imposed under Fed. R. App. P. 7).

For these reasons, then, we have jurisdiction to review these appeals from the district court's order imposing the Rule 7 appeal bond.[2]

## III. DISCUSSION

The district court imposed an appeal bond in the amount of $1,007,294, which covered three categories of costs: 1) the cost to send class members notice of Objectors'

[2] In a related argument, Nelson contends that Plaintiffs, in moving to dismiss her appeal for lack of jurisdiction, failed to follow 10th Cir. R. 27.3(C), which requires that "[e]very motion filed under Fed. R. App. P. 27 and this rule must contain a statement of the opposing party's position on the relief requested or why the moving party was unable to learn the opposing party's position." Regardless, this court has an independent duty to examine its own jurisdiction. See Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1274 (10th Cir. 2001). Because we conclude we have jurisdiction, we DENY Plaintiffs' motion to dismiss Nelson's appeal. Nelson also requests sanctions against Plaintiffs, pursuant to 10th Cir. R. 46.5(D), for filing the motion to dismiss. We DENY that request because Plaintiffs did not file their motion for an improper purpose, nor was Plaintiffs' jurisdictional argument frivolous, see id. § 46.5(B)(1), (2).

merits appeals challenging the class settlement ($647,674); 2) additional administrative costs to maintain the settlement pending Objectors' merits appeals ($334,620); and 3) costs for "printing and copying and preparation of a supplemental record" to defend against Objectors' merits appeals ($25,000). (Nel. App. at 724.)

**A. The appeal bond cannot cover either the cost of sending class members notice of Objectors' merits appeals or the additional administrative costs to maintain the settlement pending those merits appeals**

The first issue presented is whether an appeal bond can, as a matter of law, cover the cost of notifying class members of Objectors' merits appeals and the cost of maintaining the settlement pending those appeals. We review this legal question de novo. See Noatex Corp. v. King Constr. of Houston, L.L.C., 732 F.3d 479, 488 (5th Cir. 2013); In re Cardizem CD Antitrust Litig., 391 F.3d 812, 816 (6th Cir. 2004).

Rule 7 provides in pertinent part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." (Emphasis added.) The purpose of a Rule 7 appeal bond is to ensure that the appellant, if he is unsuccessful on appeal, can pay the "costs on appeal" incurred by his opponent. See 16A Wright et al., Federal Practice & Procedure § 3953. Thus, "[c]osts for which a Rule 7 bond can be required include only costs relating to the appeal," id.; that is, costs which "the appellee stands to have

reimbursed" should he prevail on appeal, Adsani v. Miller, 139 F.3d 67, 75 (2d Cir. 1998).[3]

Although an issue of first impression in the Tenth Circuit, other circuit courts addressing the meaning of "costs on appeal" have consistently linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute. This is true even though the circuits disagree as to precisely what costs a Rule 7 appeal bond can cover. For example, the D.C. and Third Circuits restrict an appeal bond to only costs listed in Fed. R. App. P. 39, which include "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." See In re Am. President Lines, Inc., 779 F.2d 714, 716 (D.C. Cir. 1985) (per curiam); Hirschensohn v. Lawyers Title Ins. Corp., No. 96-7312, 1997 WL 307777, at *1-*3 (3d Cir. June 10, 1997) (unpublished). Other circuits permit an appeal bond also to cover costs which are expressly recoverable "as costs" under the

[3] A Rule 7 appeal bond is similar to, but distinguishable from, a supersedeas bond, which a court can require to preserve a money judgment when staying execution of that judgment pending appeal, Fed. R. Civ. P. 62(d); Fed. R. App. P. 8(a)(2)(E). See 16A Wright, et al., Federal Practice & Procedure § 3953 (noting a Rule 7 appeal bond "should not be confused with a supersedeas bond"). "[A] 'supersedeas bond' is retrospective covering sums related to the merits of the underlying judgment (and stay of its execution), whereas a [Rule 7 appeal or] 'cost bond' is prospective relating to the potential expenses of litigating an appeal." Adsani, 139 F.3d at 70 n.2 (2d Cir.). And, whereas a Rule 7 appeal bond is restricted to costs on appeal, see Fed. R. App. P. 7, a supersedeas bond usually covers the full amount of the money judgment, "together with costs, interest, and damages for delay," 11 Charles Alan Wright et al., Federal Practice & Procedure § 2905 (3d ed. Apr. 2013).

substantive statute underlying the claims at issue. See Adsani, 139 F.3d at 71-75 (2d Cir.); see also Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 953-54 (9th Cir. 2007); Young, 419 F.3d at 1203-04 (11th Cir.) (applying Pedraza v. United Guar. Corp., 313 F.3d 1323, 1328-35 (11th Cir. 2002)); Int'l Floor Crafts, Inc. v. Dziemet, 420 F. App'x 6, 17 (1st Cir. 2011) (unpublished). The Sixth Circuit goes further, permitting an appeal bond to cover appellate attorneys' fees recoverable under the substantive statute underlying the litigation, even if that statute does not expressly state that those fees can be recovered "as costs." In re Cardizem CD Antitrust Litig., 391 F.3d at 815-18 & 817 n.4 (6th Cir.). And the First Circuit, contrary to several other circuits, permits an appeal bond to cover attorneys' fees recoverable under Fed. R. App. P. 38, which provides that "[i]f a court of appeals determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee," if there is "a real possibility" that the court of appeals will deem the appeal to be frivolous. Sckolnick v. Harlow, 820 F.2d 13, 14-15 (1st Cir. 1987) (per curiam). But see Vaughn v. Am. Honda Motor Co., 507 F.3d 295, 298-99 (5th Cir. 2007) (per curiam) (holding an appeal bond cannot cover appellate attorneys' fees under Fed. R. App. P. 38); Azizian, 499 F.3d at 954, 960-61 (9th Cir.) (same); In re Am. President Lines, 779 F.2d at 716-17 (D.C. Cir.) (same).[4]

---

[4] Plaintiffs contend that these circuit decisions are not relevant because most of them addressed whether an appeal bond could cover attorneys' fees, which are not at issue here. But these circuit cases addressed attorneys' fees in the context of determining whether those fees should be deemed "costs on appeal" that can be included in a Rule 7

Circuit courts, in any event, consistently define "costs on appeal" for Rule 7 purposes as appellate costs expressly provided for by a rule or statute. But Plaintiffs have not identified, nor could we find, any rule or statute that permits them, should they succeed in defending Objectors' merits appeals, to recover the cost of notifying class members of those merits appeals or to recover the cost of maintaining the class settlement fund pending the merits appeals. Therefore, the district court erred in requiring Objectors to post an appeal bond covering these costs.

Plaintiffs argue for a broader definition of "costs on appeal," pointing to the fact that the imposition of an appeal bond is left to the district court's discretion. Although the district court is vested with discretion to determine whether to impose an appeal bond and, if so, in what amount, see Fed. R. App. P. 7 Advisory Committee Notes (leaving "the question of the need for a bond and its amount in the discretion of the district court"), Rule 7 expressly limits that bond to covering "costs on appeal." And, as explained above, circuit courts have unanimously limited that phrase to include only costs authorized by rule or statute. We therefore reject the argument that courts have discretion to include in an appeal bond any cost an appellee might incur in defending an appeal. See In re Am. President Lines, Inc., 779 F.2d at 716-17 (D.C. Cir.) (rejecting argument that district court's inherent discretion supported imposing a Rule 7 appeal

---

bond. See Azizian, 499 F.3d at 958 (9th Cir.) (holding "that the term 'costs on appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees"). These circuit cases, then, are relevant to the issue presented here.

bond that covered appeal costs other than those set forth in Rule 39).

Plaintiffs further contend that a broader interpretation of "costs on appeal" is particularly appropriate in a class action setting where, as here, one or two objectors can delay implementation of a large settlement. But the federal appellate rules do not provide distinct procedures for appeals from class actions. See John E. Lopatka & D. Brooks Smith, "Class Action Professional Objectors: What to Do About Them?" 39 Fla. St. U. L. Rev. 865, 928-29 (2012) (arguing for revisions to Fed. R. App. P. 7 and 39 to permit appeal bonds to cover increased administrative costs in order to deter professional objectors from taking baseless appeals in order to delay implementation of class settlements). What Plaintiffs really appear to be seeking is an appeal bond that includes damages due to the delay Objectors' merits appeals might cause. But that is not the purpose of a Rule 7 bond.[5]

---

[5] A supersedeas bond can cover damages for delay, but a Rule 7 bond like the one at issue here cannot. See Vaughn, 507 F.3d at 298-99 (reducing Rule 7 appeal bond because such a bond cannot be used as a "surrogate for a supersedeas bond" by securing "the benefits that would inure to the class members under the settlement agreement"); In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig., 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) (refusing to include delay costs in Rule 7 bond, noting doing so "is not widely adopted"); see also In re Initial Pub. Offering Sec. Litig., 728 F. Supp. 2d 289, 297 (S.D. N.Y. 2010); 11 Wright et al., Federal Practice & Procedure § 2905. Plaintiffs did not seek a supersedeas bond in this case because there is no judgment yet to be stayed pending Objectors' merits appeals. See In re Navistar Diesel Engine Prods. Liab. Litig., No. 11 C 2496, 2013 WL 4052673, at *3 (N.D. Ill. Aug. 12, 2013) (unreported). That is because Plaintiffs and Western Union expressly provided that their settlement would not become effective until all appeals challenging the settlement are resolved. See Vaughn, 507 F.3d at 299 (5th Cir.); In re Am. Investors Life Ins. Co., 695 F. Supp. 2d at 166.

Although Plaintiffs can point to several unreported district court cases imposing appeal bonds that cover delay damages or increased administrative costs to maintain a class settlement pending appeal, we do not find the reasoning of those cases persuasive in light of the unanimous circuit authority restricting an appeal bond to costs expressly permitted by rule or statute.[6]

Because Plaintiffs have not identified any rule or statute that allows them to recover, as costs on appeal, funds spent either notifying class members of Objectors' merits appeals or maintaining the settlement pending those appeals, the district court erred in imposing a Rule 7 appeal bond that included those costs.

**B. The district court abused its discretion in imposing an appeal bond that covered $25,000 in costs for printing, copying, and preparing the appellate record**

Next, Objector Dorsey challenges the district court's decision to include in the appeal bond $25,000 for printing, copying, and preparing the appellate record**.** Although such costs are recoverable "costs on appeal," see 28 U.S.C. § 1920; Fed. R. App. P. 39(e), the district court abused its discretion in including $25,000 here to cover such costs. See Westinghouse Credit Corp. v. Bader & Dufty, 627 F.2d 221, 224 (10th Cir.

[6] For example, Plaintiffs rely on In re Cardizem CD Antitrust Litigation, in which the Sixth Circuit upheld an appeal bond that covered, as damages for delay, administrative costs to maintain the class settlement during an objector's appeal. 391 F.3d at 815, 817-18. But the Sixth Circuit did so because the Tennessee statute underlying that diversity case expressly provided for the recovery of "damages incurred, including reasonable attorney's fees and costs." Id. at 817 (quoting Tenn. Code § 47-18-109(e)(2) (emphasis omitted)). That case, then, is consistent with case law from other circuits permitting an appeal bond to cover only costs on appeal made expressly recoverable by rule or statute.

1980).

Plaintiffs have failed to justify the need for the appeal bond to cover an estimated $25,000 for printing, copying, and record preparation, asserting only that "[a] bond for such expenses is routine and need not be requested with specificity given the number of unknowns that counsel face when asking for such a bond" (Nel. App. at 702). While an appeal bond request by necessity must be based on an estimate of the costs that a litigant may incur in defending against an appeal, Plaintiffs here made no effort to justify their $25,000 estimate. See Swenson v. Bushman Inv. Props. Ltd., No. 1:10-CV-00175-EJL, 2013 WL 6491105, at *4 (D. Idaho Dec. 9, 2013) (unreported) (reducing bond from $50,000 to $25,000 because appellees "have not offered any indication of how they arrived at the requested $50,000 bond amount, and have not detailed the precise costs they expect to incur on appeal"); In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig., No. 09-MD-2023 BMC, 2013 WL 4735641, at *3 (E.D.N.Y. Sept. 3, 2013) (reducing $25,000 bond amount, which appellees "failed to justify," to $5,000 for printing and copying appellate record). And, although Plaintiffs point to a number of cases in which a district court imposed an appeal bond for $25,000 in printing, copying, and record preparation costs, Plaintiffs have not explained how the costs at issue in those cases are similar to the costs Plaintiffs expect to incur here. See In re Bayer Corp., 2013 WL 4735641, at *3.

Before the district court, Objector Dorsey conceded that Plaintiffs were entitled to a $5,000 bond to cover printing, copying, and record preparation costs. We therefore

reduce the appeal bond to $5,000. See In re Am. Investors, 695 F. Supp. 2d at 167 & n.10 (E.D. Pa.) (accepting appellant's cost estimate, where party seeking appeal bond failed to present district court with an amount for the requested bond); see also In re Bayer, 2013 WL 4735641, at *3 (E.D. N.Y.) (reducing $25,000 bond amount, which appellees "failed to justify," to $5,000 for printing and copying appellate record).

**C. A $5,000 appeal bond does not deprive Nelson of her rights to due process and equal protection of the law**

Lastly, Nelson argues that, because she cannot afford to post a bond in any amount, the district court's decision requiring her to post any bond deprives her of due process and equal protection of the law. To be sure, courts have acknowledged the possibility that an appeal bond might so burden a party's pursuit of an appeal that it violates due process and equal protection. See Adsani, 139 F.3d at 78 (2d Cir.) (noting cost requirement, valid on its face, still "may be unconstitutional as applied to a particular case"). In this case, however, we conclude that an appeal bond of $5,000 is not so burdensome as to deprive Nelson of due process or equal protection of the law. After all, that amount only involves the costs that Nelson will have to pay in the event her appeal is unsuccessful. See Tri-Star Pictures, Inc. v. Unger, 32 F. Supp. 2d 144, 145-46, 148 (S.D.N.Y. 1999) (noting, in imposing Rule 7 appeal bond, that "[i]f Defendants are insolvent to the point that they cannot afford a $50,000 bond, it is bewildering for this Court to comprehend how Defendants could produce enough capital to pay [the] legal fees" being secured by the bond), aff'd, 198 F.3d 235 (Table) (2d Cir. 1999). See

generally Adsani, 139 F.3d at 77 (2d Cir.) (noting that any appeal bond will burden the right to appeal to some degree). Further, Nelson's affidavit does not establish that she is unable to post a $5,000 bond, but only that such a bond would make it difficult for her to pay her bills. Nelson has, therefore, failed to establish that imposing a $5,000 appeal bond will deprive her of due process or equal protection.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's decision to impose an appeal bond, but we decrease the amount of that bond to $5,000. Each Objector will have fourteen days from the date this opinion is entered to post a $5,000 bond. Failure to do so will result in the dismissal of that Objector's merits appeal. Plaintiffs' motion to dismiss Nelson's appeal is DENIED.